**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WAYNE EDWARD CHANDLER,
                              Plaintiff,
         v.                                                    No. 11-CV-152
                                                                    (DRH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

ERWIN, McCANE & DALY                THOMAS C. ERWIN, ESQ.
Attorney for Plaintiff
23 Elk Street
Albany, New York 12207

HON. RICHARD S. HARTUNIAN           SANDRA M. GROSSFELD, ESQ.
United States Attorney for the      Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

         Plaintiff Wayne Edward Chandler ("Chandler") brings this action pursuant to 42

U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act.

Chandler moves for a finding of disability and the Commissioner cross-moves for a

judgment on the pleadings.  Dkt. Nos. 10, 11.  For the reasons which follow, Chandler's

---

         [1]The parties have consented to the jurisdiction of the undersigned in accordance
with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Dkt. No. 13.

motion is granted and the Commissioner's decision be remanded for further proceedings.

## I. Background

## A. Facts

Born on November 13, 1967, Chandler was forty years old when he applied for disability benefits.  T. 14.[2]  Chandler completed ninth grade in a regular, matriculated program, but did not later receive his General Education Degree ("GED").  T. 24.  Chandler can read and write.  T. 24.  Chandler has two children but lives alone, receiving daily visits from the children's mother who assists him with his daily needs by shopping for groceries and doing his laundry.  T. 23, 38-40.  Chandler previously worked in physically laborious jobs, including as a meatpacker, night time cleaner, baggage handler, and dishwasher.  T. 26.  Chandler alleges an inability to work due to hypertension and chronic arthritis, which affected his feet and ankles and, just recently at the time of his testimony, began also affecting his back.  T. 26-29.

### 1. Notes with Treating Orthopaedist Dr. Lisella

### a.  Ankle

On February 21, 2008, Chandler went to Albany Medical Center because he was in a lot of pain and could barely walk.  T. 188.  Chandler had previously had surgery on his right ankle in the early 1990s and was experiencing extreme pain in his ankle,

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 8.

though he was "feeling well and [did] not have any other areas of discomfort." T. 188.

Radiology results showed "severe degenerative joint disease with very little joint space."

T. 188. The doctors concluded that Chandler had "[m]arked post-traumatic arthritis . . .

." in his ankle. T. 187. The condition was "chronic . . . and unlikely to change . . . ." T.

189.

On February 25, 2008, Chandler met with Dr. Lisella at Capital Region

Orthopaedics. T. 200-201. Dr. Lisella's examination showed significant swelling and

loss of range of motion in Chandler's right ankle. T. 200. However, there was no pain

in his foot and "[t]he rest of his neurovascular and musculoskeletal examination [wa]s

noncontributory [and his u]pper extremity joints all show[ed] good pain free range of

motion, pulses, sensation, and reflexes." T. 200. On April 4, 2008, Dr. Lisella

performed an ankle fusion to correct the problem. T. 192-93, 200-201.

On April 22, 2008, Chandler was noted to be "doing very well" with "excellent

position of the bone and hardware" seen on x-rays. T. 197. Chandler returned on May

14 with similar reports, "doing very well . . . minimal [swelling] . . . hardware . . . in

excellent position [and] . . . almost complete fusion of the ankle." T. 196. Dr. Lisella

recommended progressive weightbearing and prescribed Chandler a walking boot. T.

196. When Chandler returned in June, he was still doing well with "no pain with [his]

range of motion." T. 195. Chandler was cleared for regular activity with the exception

of work and heavy lifting. T. 195. It was anticipated that Chandler could return to work

after the next check up.

Chandler was last seen August 18, 2008. T. 194. He continued to progress with

a "well-healed incision, no motion at the ankle joint, [and] no significant pain." T. 194.

3

The fusion was "in [a] good position", as was the bone, so Chandler was allowed to continue with his regular activities, including returning to work. T. 194. Chandler stated that he was still limited at work due to occasional pain and stiffness, but overall he had experienced a good result. T. 194. On November 3, 2008, Dr. Lisella noted that Chandler was "doing very well" still from the ankle fusion that had been completed seven months earlier. T. 248.

### b. Great Toe

On September 23, 2008, Chandler returned to Dr. Lisella with complaints of left great toe pain and swelling. T. 204. While the problem had persisted for years, it had flared up in the past few days. T. 204. Physical examination showed pain and tenderness over portions of the bones of the left, great toe, but none with its range of motion. T. 204. Further examination found "[n]o other areas of tenderness, good range of motion of his foot and ankle, good strength in his tendons[, and t]he rest of his nuerovascular [and] musculoskeletal exam [wa]s noncontributory." T. 204. X-rays were taken which showed a probable, prior, healed fracture. T. 204. Dr. Lisella recommended "anti-inflammatories, activity modification, and postop shoe[s]." T. 204.

On January 14, 2009, after conservative treatments had failed, Chandler underwent another operation with Dr. Lisella to remove the sesamoid bone in his great toe. T. 246-48. On February 2, 2009, examination showed that he was doing well and radiology results indicated that there were no bony fragments in his toe. T. 245. Chandler returned again, two weeks later, with "minimal swelling, but . . . still . . . some pain and stiffness in the joint." T. 244. Chandler was recommended to continue

wearing his postop shoe and to follow up again in a month.  T. 244.

### c.  Employability Assessments

On November 3, 2008, Dr. Lisella completed his first assessment.  T. 219-20.
He indicated that Chandler was moderately limited in his abilities to (1) walk, (2) stand,
(3) lift and carry, (4) push, pull or bend, and (5) climb or use stairs.  T. 219.  Dr. Lisella
found no other physical or mental limitations.  T. 219-20.  Dr. Lisella concluded that
Chander was "temporarily, totally disabled," but that the restrictions would not last
longer then ninety days.  T. 220.  On March 16, 2009, Dr. Lisella completed his second
report which stated that Chandler was unable to work.  T. 242.  Dr. Lisella found the
same moderate impairments which were previously noted in November 2008.  T. 242-
43.  Dr. Lisella also concluded that Chandler required a job with limited walking, namely
a "sedentary job[]."  T. 243.  On June 17, 2009, Dr. Lisella completed his final report
which stated that Chandler was very limited in his abilities to (1) walk, (2) stand, (3) lift
and carry, and (4) climb.  T. 240.  No other limitations were noted.  T. 240-41.  Dr.
Lisella indicated that Chandler's limitation with walking, carrying objects, and standing
for extended amounts of time resulted in a situation where Chandler required "a
sedentary type job."  T. 241.

### 2.  Treating Physician Dr. Scher

Chandler was seen by Dr. Scher in 2004 and 2005.  T. 256-62.  On February 4,
2008, Chandler returned to the office stating that he had stopped all blood pressure

medications and had a resulting blood pressure of 212/220.  T. 210-11, 254.  Chandler

was urged to restart his medication and counseled to stop smoking.  T. 254.  In a report

dictated October 20, 2008, Dr. Scher reported that Chandler had a history of

hypertension, he was not currently taking any blood pressure medications, and his last

visit was in February.  T. 210.  As Chandler had not returned to Dr. Scher's office, "[n]o

other comments c[ould] be made on the disability . . . . " T. 211.

       Chandler again returned on March 20, 2009, again stating that he was not on

any blood pressure medication and had not been for the past year.  T. 253.  Chandler

was counseled on the importance of maintaining appointments and medication, as his

blood pressure was again high at 220/140.  T. 253.  A physical examination and an

EKG were scheduled.  T. 253.  On March 26, Chandler underwent a physical

examination whereupon his previous non-compliance with his medication was noted,

but so was his present adherence to his medication regimen.  T. 251.  Upon

examination, Chandler reported no issues with his musculoskeletal system and denied

"any gait abnormality, myalgia, muscular weakness, [or] night cramps."  T. 251.

Chandler's back demonstrated a normal curvature, full range of motion, and no points

of tenderness.  T. 252.  His blood pressure was markedly improved at 138/86.  T. 251.

       Chandler was seen again on July 9, 2009, with a blood pressure reading of

130/82.  T. 250.  Dr. Scher counseled him on diet and exercise and referred him to a

cardiologist for his abnormal EKG.  T. 250.  However, in October, Chandler returned

again disclosing his non-compliance with his medication.  T. 273.  Chandler stated that

because of a "poor financial situation," he was unable to take his medication and his

blood pressure consequently increased to 180/118.  T. 273.  Dr. Scher's office offered

assistance with securing insurance and counseled him on the importance of finding generics and continuing to follow up with the office.  T. 273.

### 3. Physical Therapy

Chandler underwent physical therapy from March 27 through April 23, 2009, for nine treatment sessions.  T. 237-38.  By the end of his therapy, Chandler was (1) no longer complaining of pain when standing and weight bearing; (2) able to toe raise, heel raise, and heel walk, had improved in flexibility and ability to toe walk; and (3) within normal limits regarding his gait.  T. 233-35.  The ultimate conclusion was that Chandler had "reached [his] maximum therapeutic benefit."  T. 235.  As all of his goals were met and his prognosis was deemed fair to good, Chandler was released from therapy to a home program.  T. 236.

### 4. Consultative Reports[3]

On October 1, 2008, Chandler was examined by consultative physician Dr. Puri. T. 205-208.  Chandler's chief complaint was bilateral arthritis in his feet, which was exacerbated by the "cold, walking, and standing for long periods of time and decreased with medication when needed."  T. 205.  Chandler also reported high blood pressure

---

[3] While the Administrative Law Judge does not rely upon the physical RFC assessment completed by the single decision maker ("SDM"), the claimant's counsel cites to this as part of their factual record.  While not expressly decided by the Second Circuit, other federal courts have determined that the opinions of a SDM are entitled to no weight as a medical opinion since the SDM is not a medical professional.  See Miller v. Astrue, No. 10-CV-1028-WC, 2012 WL 174589, at *3 (M.D. Al. Jan. 23, 2012) (citing cases).  Moreover, citation to the SDM RFC was gratuitous because it relies solely upon the information in the report authored by Dr. Puri, whose findings are discussed infra.

since 2007.  T. 205.

Chandler's activities of daily living included cooking, cleaning, laundry, and shopping.  T. 206.  Chandler reported also being able to take care of his personal hygiene needs, watch television, listen to the radio, and go on outings.  T. 206.  His blood pressure was 150/94.  T. 206.  Chandler was mildly limping and had mild difficulty walking on his heels and toes and squatting.  T. 206.  Chandler had a normal stance, and while he used a prescribed cane to assist with his ambulation, observations of him walking with the cane were identical to those made when he was walking without it.  T. 206.  Thus, Dr. Puri "d[id] not see [the cane] as necessary."  T. 206.  Chandler also required no assistance changing, getting on and off from the examination table, or rising from a chair.  T. 206.

Physical examination showed that Chandler retained full range of motion in all areas of his spine, shoulder, elbows, forearms, hips, knees, and left ankle.  T. 207.  Chandler's right ankle had a "markedly decreased range of motion."  T. 207.  Chandler's strength was very good in both his upper and lower extremities and there were no signs of tenderness, redness, heat, or swelling.  T. 207.  Dr. Puri diagnosed Chandler with bilateral arthritis in his ankles and high blood pressure. T. 207.  His prognosis was fair and Dr. Puri concluded that "[t]here were no objective limitations to [Chandler's] gait or to his activities of daily living . . . [i]t is recommended that [he] . . . follow up with his physician for his elevated blood pressure . . . ."  T. 207-08.

### 5. Chandler's Testimony

Chandler testified that his main health concerns were his hypertension and

8

arthritis.  T. 26-29.  Chandler stated that the day prior to the hearing, he went to the

doctor's office because while he was sitting and ironing his shirt, his "back gave out . . .

."  T. 26.  Chandler then stated that he went to the Bone and Joint Center where an x-

ray showed arthritis in his lower back.  T. 27.  In addition to his back, Chandler had pain

and prior surgeries on his right ankle and left toe.  T. 27.  Chandler also saw Dr. Shear

for treatment of his high blood pressure.  T. 28.  Chandler took medication to control his

hypertension, as well as ibuprofen for pain.  T. 28-29.

Chandler's chronic arthritis caused pain and swelling in his feet.  T. 29.  At home,

he often propped up his feet.  T. 29.  Chandler experienced this swelling whenever he

went out to attend to his personal business, stating his recovery time for the swelling to

dissipate was four to five days.  T. 35.  Recently, elevating his feet for a prolonged

amount of time had caused pain in his back to the point that he must lie down.  T. 35.

Chandler could also no longer cook because extended time spent on his feet

caused immense pain.  T. 29.  Chandler could only stand for fifteen to twenty minutes,

walk a short distance, and sit for an hour and a half at a time.  T. 30.  Chandler was

also extremely limited with objects that he could carry, stating that he was incapable of

carrying his laundry or bags of groceries.  T. 30-31.  Chandler used a motorized cart

when shopping.  T. 31.  Additionally, while Chandler could generally complete his

activities of daily living independently, he experienced trouble putting on his shoes,

doing his laundry, vacuuming, and shopping.  T. 31-32.[4]  Chandler spent his days

watching television and very occasionally visiting with family and friends, leaving the

---

[4] The mother of Chandler's children checked on Chandler and did his laundry.  T. 40.

house to go pay his rent and go to the park, and reading magazines.  T. 33, 43.

Chandler used a cane to assist him with ambulation.  T. 36.  Chandler had difficulty navigating concrete stairs, climbing the sideways so that he did not twist his ankle.  T. 36.  Chandler's right ankle generally caused soreness and pain upon overuse, but that his left foot and toe throbs, with sharp pain.  T. 37-38.  Chandler also was given a walker after his second foot surgery that he continued to use.  T. 38-39.

Chandler also explained that although he had not worked since February of 2008, he received income from unemployment.  T. 24-25.  When asked how, if he was disabled, he could receive unemployment, Chandler explained that Dr. Lisella completed a form indicating that Chandler could work at a sedentary job.  T. 41.  Concurrently, Chandler was also "looking for a desk job" and had applied at two different employers.  T. 41.  While he had not yet heard back from the potential employers, Chandler also explained that as long as Dr. Lisella "says [Chandler] could do maybe a desk job, they're going to keep paying [unemployment to Chandler]."  T. 42.  Chandler also emphasized that since he had just seen Dr. Lisella the day prior for the arthritis in his back, he now believed that "the desk job is out of the question . . . ."  T. 42.  However, there were no additional reports submitted from Dr. Lisella regarding Chandler's back.  T. 42.

### B. Procedural History

On July 29, 2008, Chandler filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of February 23, 2008.  T. 100-104.  That application was initially denied on

October 23, 2008.  T. 47-54.  Chandler requested a hearing before an administrative law judge ("ALJ") which was held on November 18, 2009. T. 20-44, 55-56.  In a decision dated December 23, 2009, the Administrative Law Judge (ALJ) held that Chandler was not entitled to disability benefits. T. 6-15.  Chandler's counsel filed a timely request for review with the Appeals Council and on January 27, 2011, the request was denied, thus making the ALJ's findings the final decision of the Commissioner.  T. 1-5, 99.  This action followed.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry, 675 F.2d at 467.  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the

Commissioner if the record contains substantial support for the ALJ's decision. Yancey

v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported

by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at

31.

### B.  Determination of Disability[5]

"Every individual who is under a disability shall be entitled to a disability. . .

benefit. . . ." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically

determinable impairment is an affliction that is so severe that it renders an individual

unable to continue with his or her previous work or any other employment that may be

available to him or her based upon age, education, and work experience. Id. §

423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical

and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the

impairment is "based [upon] objective medical facts, diagnoses or medical opinions

inferable from [the] facts, subjective complaints of pain or disability, and educational

background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB),

---

[5] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d

1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a 'severe
> impairment' which significantly limits his [or her] physical or mental ability
> to do basic work activities.  If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will consider him [or
> her] disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a 'listed' impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity to perform his
> [or her] past work.  Finally, if the claimant is unable to perform his [or her]
> past work, the [Commissioner] then determines whether there is other
> work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).  The plaintiff bears the initial

burden of proof to establish each of the first four steps.  <u>DeChirico v. Callahan</u>, 134

F.3d 1177, 1179-80 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467).  If the inquiry

progresses to the fifth step, the burden shifts to the Commissioner to prove that the

plaintiff is still able to engage in gainful employment somewhere.  <u>Id.</u> at 1180 (citing

<u>Berry</u>, 675 F.2d at 467).


**C. ALJ's Findings**

In his opinion, the ALJ gave great weight to (1) the 2008 consultative

examination performed by Dr. Puri; (2) the October 2008 and March 2009 treating

13

records from primary treating source Dr. Scher; and (3) the medical records and, specifically, the source statements provided by treating orthopaedist Dr. Lisella in March and June of 2009.  T. 13.  The ALJ accorded little credibility to Chandler's testimony because certain "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . are inconsistent with the above residual functional capacity assessment."  T.13.

Using the five-step disability sequential evaluation, the ALJ found that Chandler (1) had not engaged in substantial gainful activity since February 23, 2008, the alleged disability onset date; (2) had medically determinable impairments of bilateral ankle arthritis, status post right ankle fusion, left foot tibial sesamoid, status post surgery, and hypertension; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (5) maintained the residual functional capacity ("RFC") to perform the full range of sedentary work; (6) could not perform his past relevant work; (7) was a younger individual with a limited education and ability to communicate; but (8) given his age, education, work experience, and RFC, he was still able to perform work which exists in significant numbers in the national economy.  The ALJ concluded that Chandler was not disabled.

### D.  Chandler's Contentions

Chandler contends that the ALJ's decision denying benefits should be remanded or judgment should be granted in his favor because (1) the ALJ erred in failing to develop the record fully regarding Chandler's new alleged severe impairment regarding

his lower back; (2) the ALJ erroneously held that Chandler's impairments, alone or in combination, failed to meet or equal a listed impairment; and (3) the ALJ incorrectly determined Chandlers RFC and thus, the Commissioner erred in his decision at Step 5. See generally Pl.'s Br. (Dkt. No. 10).

### 1. Developing the Record

An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application . . . ."); 20 C.F.R. § 404.1512(e)(explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations).  Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted); see also Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks and citations omitted).

This duty exists, in varying degrees, depending upon whether or not the claimant

15

is represented and in what capacity.  See <u>Smith v. Bowen</u>, 687 F. Supp. 902, 906 (S.D.N.Y. 1988) ("The ALJ's duty to develop the comprehensive record . . . is greatest when claimant is unrepresented; but the duty still exists when plaintiff is represented and even more . . . where plaintiff if represented . . . by a paralegal."); <u>see</u> <u>also</u> <u>Cruz v. Sullivan</u>, 912 F.2d 8, 11, (2d Cir. 1990) ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts.") (internal quotation marks and citations omitted).

In this case, Chandler testified that the primary problem which prohibited him from doing work was his back.  T. 26.  "[A]n ALJ is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."  <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713 (8th Cir. 2003) (citations omitted).  However, the ALJ was aware that, at the time of the hearing, there was another basis for disability being offered.  The ALJ asked if the original problem was arthritis in his ankles, to which Chandler agreed, but the fact remains that Chandler indicated that his primary disability at that time was his back pain, subsequently diagnosed as arthritis.

Moreover, Chandler indicated that there would be medical notes and radiology results from the treating orthopaedist because he had gone there for treatment the day before the hearing.  The ALJ even memorialized Chandler's statements about back pain in his opinion.  Accordingly, the ALJ was on notice that a new disabling condition had materialized and should have supplemented the record by contacting the physicians who Chandler identified as providing him treatment or, in their absence,

ordering a consultative examination.  Compare id. (denying a claimant's request for remand to supplement the record because "neither [claimant's] family doctor nor any other treating physician knew of any [new, disabling impairments] . . . Further, [claimant] testified at the hearing that he did not believe he had any [additional disabling impairments . . . .").

Any attempt to rely on the current status of the medical record is inappropriate. The last evaluation of Chandler's back was made in March 2009 when Dr. Scher specifically stated that his back had normal curvature and full range of motion.  There were no additional observations of back pain, or specific statements referencing a lack thereof, when Chandler was discharged from physical therapy in April 2009, or when Dr. Lisella completed his final work ability assessment in June 2009.  Accordingly, there is nothing in the record to indicate the health and wellness of Chandler's back after June 2009, which was four months prior to his testimony.  Even assuming there was nothing wrong with his back prior to the hearing, this still does not resolve the ALJ's failure to supplement the record when Chandler testified that an acute onset of back pain had occurred the day prior requiring medical treatment and leading Chandler to assume that prolonged periods of sitting, an ability on which the ALJ relied in order to determine Chandler's RFC, were no longer possible.

Moreover, claims that a subjective diagnosis "without more, does not suggest that [Chandler's back] . . . severely impairs h[is] performance of any major life activity," are unsupported given the present state of the record.  Serianni v. Astrue, No. 07-CV-250 (NAM), 2010 WL 786305, at *3 (N.D.N.Y. Mar. 1, 2010) (citations omitted). Contrary to Serianni, where there was substantial medical evidence in the record that

the effects of the alleged impairment, depression and anxiety, were mild and generally corrected with medication, there is no evidence in the record regarding the status of Chandler's back even though he testified to receiving medical treatment and radiology studies from one of his regular, treating physicians.  <u>Compare</u> <u>id.</u> at *3-*4 (affirming the ALJ's decision because the medical evidence demonstrated claimant's depression and anxiety was (1) well controlled with medication and (2) resulted in sporadic treatment and, when being treated was only intermittently brought up as a problem by the claimant).  Moreover, Chandler's testimony that his "back . . . snapped and [he] couldn't move . . . ." indicates an impairment that caused functional limitations which precluded him from engaging in substantial gainful activity.  Additionally, given the chronic nature of arthritis and Chandler's own, recognized, severe battles with it, it is fair to presume that this limitation will continue for more than twelve months.

However, claimant's attorney, also present and involved with the hearing, was also aware of the alleged serious medical condition as he was there when Chandler testified about it.  The attorney also had a dialogue with Chandler whereupon the new allegations were addressed, specifically:

> [Atty]   And unemployment, as long as the doctor says you could do maybe a desk job, they're going to keep paying it.
> [Clmt]   Right, and then I went to see him yesterday and being that the arthritis moved to my back, I guess the desk job is out of the question now.
> [Atty]   Okay, well we don't have any report from him from yesterday yet.
> [Clmt]   Right, no.

T. 42.  Chandler's representative never sought leave to supplement the medical record with the ALJ.  Moreover, even after receiving information from the Appeals Council that

18

he could "send [the Council] more evidence or a statement about the facts . . . in this

case," Chandler's representative did not do so.  T. 91.  Chandler's representative sent a

memorandum to the Appeals Council seeking remand based upon <u>inter alia</u> the ALJ's

failure to develop the record further.

As there was no evidence regarding Chandler's back ailments in the medical

record, there was an identified gap or ambiguity that required further supplementation.

The question thus presented is whose duty was it to further inquire into the back

condition.

> It is unclear as to why [Chandler's] counsel did not
> supplement the record; however, regardless of whom is to
> blame, the end result is a . . . gap . . . [and i]t is the ALJ's
> duty to investigate the facts and develop the arguments both
> for and against granting benefits . . . When circumstances
> point to the probable existence of probative and necessary
> evidence, which has not been furnished by the claimant, the
> failure of an ALJ to ask further questions, request additional
> records, or contact treating sources amount to neglect of the
> ALJ's duty to develop the record . . . Moreover, if the
> information needed to make a determination is not readily
> available from treating source records, and a clarification
> cannot be obtained, the ALJ is obligated to obtain a
> consultative examination.

<u>Huddleston v. Astrue</u>, 826 F. Supp. 2d 942, 959 (S.D.W.V. 2011) (internal citations and

quotation marks omitted).

Accordingly, the Commissioner's decision will be remanded to supplement the

record with medical evidence relevant to Chandler's new complaints of disabling back

pain.

## 2. Severity

Chandler claims that the ALJ erred in determining that his impairments, considered in combination, were not sufficiently severe to cause a per se disability.  Pl. Br. at 12-13.   Chandler asserts that his impairments meet the criteria of Section 1.03, which defines severe impairment after "[r]econstructive surgery . . . of a major weight bearing joint, [as an] . . . inability to ambulate effectively[6] . . .  and return to effective ambulation did not occur, or is not expected to occur, within [twelve] months of onset." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.03.  Despite Chandler's current proffers, the medical record indicates otherwise.

Chandler underwent surgery for his ankle, received physical therapy and, according to the medical records, had a very good recovery.  Chandler relayed that he was "doing very well" upon follow-up visits with Dr. Lisella.  Also, physical therapy notes indicated that he had successfully met all of his treatment goals including ambulating within normal limits.  Chandler relies upon the prescription of his cane and walker to place him into a disability per se status.  However, the medical evaluation by Dr. Puri indicated that Chandler did not have limitations to his gait and that the cane was medically unnecessary.  These were also supported by Dr. Scher's March 2009 examination of Chandler, which noted no objective or subjectively-stated gait

---

[6] An inability to ambulate effectively "means an extreme limitation of the ability to walk . . . generally defined as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) . . . ."  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00(B)(2)(b)(1).  If an individual cannot sustain a reasonable walking pace sufficient to accomplish activities of daily living, or require a companion for safe travel, or must use a walker or two crutches or two canes, they cannot ambulate effectively.  Id. Section 1.00(B)(2)(b)(2).

abnormalities.  Accordingly, the objective medical evidence substantially supports the Commissioner's finding here.

Therefore, the Commissioner's finding in this regard is affirmed.

### 3.  RFC

Additionally, Chandler claims that the ALJ erred in determining that he retained the physical RFC to perform a full range of sedentary work.  Pl. Br. at 13-15.  RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R.  §§ 404.1545, 416.945 (2003).  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003).

Here, the ALJ found that Chandler could perform the full range of sedentary work.  Sedentary work requires

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally . . . no more than about two hours of an 8-hour workday, and . . . sitting . . . generally total[s] approximately 6 hours of an 8-hour workday.

SSR 83-10.  In coming to that assessment, the ALJ (1) gave great weight to the treatment records of Drs. Scher and Lisella and the assessments completed by Drs. Puri and Lisella and (2) deemed Chandler's subjective complaints of pain, including his back pain, "not credible to the extent they are inconsistent with the above residual functional capacity assessment."

The ALJ determines whether an ailment is an impairment based on a two-part test.  First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain.  20 C.F.R. § 404.1529 (2003).  "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'"  Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

However, for the reasons discussed supra, these medical records and assessments are incomplete.  Moreover, the ALJ's credibility assessment regarding Chandler's complaints of back pain and its effects on his activities of daily living is also questionable given the gap in the medical record which leaves a void surrounding the status of Chandler's back.  Consequently, any conclusions regarding the veracity of such claims are neither supported nor contradicted by objective evidence in the medical

record.  Thus, until the record is supplemented to determine the extent and severity of the arthritis in Chandler's back, there is insufficient evidence to determine whether the ALJ's RFC assessment is supported by substantial medical evidence.

Accordingly, the Commissioner's determination must be remanded for further consideration in light of the new evidence to be considered on remand.

### E. Remand for Additional Evidence

A reviewing court has the authority to reverse with or without remand.  42 U.S.C. §§ 405(g), 1383(c)(3) (2003).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) (citations omitted).  As previously discussed, there is an appreciable gap in the record due to the failure to seek medical treatment records for Chandler's proffered claims of back pain and a diagnosis of arthritis.  Therefore, remand is appropriate and the ALJ will be directed to consider the additional medical evidence diagnosing Chandler with arthritis in his back, develop the record as necessary to ascertain the proper weight to accord Chandler's credibility, and determine whether Chandler's diagnosis and its effects are sufficient to establish a severe impairment requiring provision of disability benefits.

During the course of the remand, the ALJ should recontact Dr. Lisella for the treatment notes and radiology reports necessary for clarification of this issue.  Mitchell v. Astrue, No. 07-CV-285, 2009 WL 3096717, at *23 (S.D.N.Y. Sept. 28, 2009) (explaining that the ALJ may be required to "solicit further information from [claimant's]

treating sources," regarding his alleged impairments) (citations omitted). If the record is still inconclusive, the ALJ should order a consultative examination pursuant to 20 C.F.R. §§ 404.1512(f) and 416.912(f).

### VI. Conclusion

For the reasons stated above, it is hereby **ORDERED** that the Commissioner's decision denying disability benefits is **REMANDED**.


DATED:   May 29, 2012

      Albany, New York

_David R. Homer_

United States Magistrate Judge